1. The court reprehends severely the practice of counsel in excepting to instructions as a whole, instead of excepting as they ought, if they except at all, to each instruction specifically. Referring to Rogers v. The Marshal (1 Wallace, 044),,&c., it calls attention anew to the penalty which may attend this unprofessional and slatternly mode of bringing instructions below before this court; the penalty, to wit, that the exception to the whole series of propositions may be overruled, no matter how wrong some may bo, if any one of them all be correct; and when, if counsel had excepted specifically, a different result might have followed.
2. Where a statute gives to county courts authority and jurisdiction to hear and determine all cases at common law or in chancery within their respective counties, and ‘‘all such other matters as by particular statute” *329 might he made cognizable therein, such county courts are courts of general jurisdiction ; and when jurisdiction of a matter, such as power to declare a redemption of land from forfeiture for taxes (in regard to which the court could act only “hy particular statute”) is so given to it, — parties, a subject-matter for consideration, a judgment tobo given, &c., being all in view and provided for by the particular statute, — the general rule about the indulgence of presumptions not inconsistent with the record in favor of the jurisdiction, prevails in regard to proceedings under the statute. At any rate, a judgment under it, declaring lands redeemed, cannot be questioned collaterally.
3. Statutes are to be considered as acting prospective!}', unless the contrary is declared or implied in them. The 21st and 22d sections of the Virginia statute of 1st April, 1831, “ concerning lands returned delinquent for the non-payment of taxes,” were not confined to delinquenciesprio-to the passing of that statute.
5. Under the code of Virginia (ch. 135, § 2), ejectment may be properly brought against persons who have made entries and surveys of any part of the land in controversy, and are setting up claims to it, though not in occupation of it at the time suit is brought.
6. Where parties enter upon land and take possession without title or claim or color of title, such occupation is subservient to the paramount title, not adverse to it.
The provisions of these two sections were, in their mate *330 rial parts, as follows; and tbe reader will observe how far they authorize redemption for delinquencies prior to the date of the act of 1st April, 1831; and how far for any term' after the passage of it.
“ § 21. If any person having title to any tract of land returned delinquent fo'r the non-payment of taxes, and not heretofore vested in the President and Directors of the Literary Fund, and having legal possession thereof, shall prove, by satisfactory evidence, to the court of the county in which such land may lie, before the fh-st day of January, 1833, that prior to the passage .of this act he was a bond fide purchaser of such land so claimed by him; that he has a deed for the same, which was duly recorded, béfore the passage of this act; and that he has paid all the purchase-money therefor, or so much' thereof as not to leave in his hands sufficient to satisfy and pay the taxes and damages in arrear and unpaid at the date of his purchase; or that he fairly derives title by, through, or under some person so having purchased and paid the purchase-money, it shall be the duty of the court to render judgment in favor of such person, exonerating the land from all arrears of taxes, and the damages thereon anterior to the date of such purchase, except so much as the balance of the purchase-money remaining unpaid will be sufficient to pay, &c.; but'no judgment shall be rendered except in presence of the attorney for the commonwealth, or of some other attorney appointed by the court to defend the interest of the commonwealth.No judgment in favor of such applicant shall be of any validity, unless it appears on the record that the attorney for the commonwealth, or the attorney appointed as aforesaid, appeared to defend the application.
“§ 22. And if any person having legal possession of and title to any tract of land returned delinquent for non-payment of taxes, and not heretofore vested in the President and Directors of the Literary Fund, shall show, by satisfactory evidence to the court of the county where the said land may lie, at any time before the first day of January, 1833, that the taxes in arrear and due thereon are not in arrear or due, either having been erroneously charged on the books of the commissioner, or having been actually paid, or that in the years for which said land or lot was so returned delinquent, there was sufficient property on *331 tlie premisos whereon the collector might have made distress, it shall be the duty of the court, under the limitations, injunctions, and conditions contained in the preceding section, to render judgment exonerating su,ch land from the taxes so erroneously charged thereupon.”
The records of the County Court of Kanawha disclosed next the following entries :
“ Therefore this court, in the presence of the attorney prosecuting the pleas of the commonwealth in said court, who hath appeared and defended this application, upon full consideration of all the matters and things on either side alleged, doth'render judgment in favor of the said Matthias Bruén, and doth-'order, adjudge,1 and decree that the said tract of land above mentioned be released, discharged, and exonerated from all the arrears of taxes and tho damages charged or chargeable thereon anterior to the 14th of *332 April, 1815, the date of the purchase thereof by the said Matthias.
“And the said Matthias Bruen, having further proved by evidence satisfactory to this court that during all the years 1815-’16-’17-’18-’19 and 1820, the years for which the said tract is charged to the said Matthias, and in his name returned delinquent for the non-payment of taxes, there was sufficient property whereon the sheriff or collector might have made distress, and out of which the said taxes for the said several years might have been made and collected. Thereupon this court, in the presence of the attorney prosecuting the pleas of the commonwealth in the said court, who hath also appeared and defended this application, upon full consideration of all the matters and things on either side alleged, doth further adjudge, order, and decree, that the said tract of land be released, discharged, and exonerated from all the arrears of taxes and the damages charged or chargeable thereon for the said several years 1815-’16-’17-T8-19, and 1820, whether the same be charged to the said Matthias or to any other person or persons whatsoever; all of which is ordered to be certified according to the act of Assembly in that case made and provided.”
An order, dated 12th of November, and similar to this last, exonerated the tract, upon the latter ground, for the years from 1821 to 1831, inclusive..
The first POINT in the case was as to the effect of these orders; that is to say, whether, under the statute, they exonerated the land; and this again depeuded, perhaps, part on the character of this County Court of Eanawha, and to what extent it was or was not a court of general jurisdiction. On this point, it appeared that these county courts derived their powers from a statute of Virginia authorizing them, whose seventh and eighth sections read thus:
“ § 7. The justices of every such court, or any four of them, as aforesaid, shall and may take cognizance of, and are hereby de dared to have power, authority, and jurisdiction to hear and determine, all cases whatsoever now pending, or which shall hereafter be brought in any of said courts at common law, or in *333 chancery, within their respective counties and corporations, and all such other matters as by any particular statute is or shall be made cognizable therein.
“ § 8. That said courts shall be holden four times per year for the trial of all presentments, criminal prosecutions, suits at common law and in chancery, where the sum or value in controversy exceeds twenty dollars, or four hundred pounds of tobacco.”
It depended, also, in part, perhaps, on another question, connected with the location-of the land. As already intimated, the land was situated in what was originally Kana-wha County, but out of Avhich another county, Mason, had been, of later times, created. At the time of these proceedings (A.D. 1881) in the County Court of Kanawha, the land had come to lie in part in this new county of Mason. It had, however, for the term of thirty-one years, — the term, for which the exoneration extended, — been always listed for taxation as one tract, and as being in the County of Kanawha; and, as the bill of exceptions showed, had been charged with taxes nowhere but in that county. Moreover, the Auditor of the State of Virginia, after these orders of the Kanawha County Court were made, entered an exoneration of taxes as to the entire tract.
Upon this whole part of the case, the court below instructed the jury that the two orders “ did exonerate the taxes delinquent on the land in controversy for the year 1831, and all years prior thereto.”
The SECOND point — one, also, which arose on the charge of the court — was, as to whether certain parties, not in possession, but, nevertheless, made defendants, were properly made so.
The code of Virginia* enacts as follows:
“ The person actually occupying the premises shall be named defendant in the declaration. If they be not occupied, the action must be against some person exercising ownership thereon, or *334 claiming title thereto, or some interest therein, at the commencement of the suit.”
Under this statute the court, on a request to charge in a particular way, charged in substance, that if some of the defendants had made entries and surveys of any part of the land in controversy, under which they were setting up claims to it, they were properly sued, although not in occupation of it at the time the suit was instituted.
The third point in the case related to adverse possession, and was whether the court had rightly charged in saying, that if the jury found plaintiff’s title was the paramount title, and that the defendants entered and took possession without any title, or claim, or color of title to any part, that such entry and possession was not adverse to-the plaintiff’s title, but was subservient thereto.
The case was twice elaborately argued in this court. Below, as here, the suit was contested with determination; and the record which was brought up showed that the defendants had asked for no less than forty-six different instructions! They ran over twelve pages, and were submitted in three series of requests. The first scries, comprising twenty-four propositions of law, thfe second series twelve, and the third ten; and it rather appeared from the bill of exceptions, that each of these series was prayed for, and the action of the court on them excepted to, as a whole. Three only of the forty-six were granted. The court below granted, also, three of the plaintiffs’ requests; in which three, in fact, the substance of all that was argued was comprised.
Verdict and judgment having been given for the plaintiff's, the case was brought here by the other side on error.
Mr. JH. Brown, for Harvey, plaintiff in error, and defen~ dant below.
1. The County Court of Kanawha was a court of inferior jurisdiction; or, rather—
2. If .not so, in general, it had a jurisdiction derived from *335 statute only in this particular matter; a matter quite alien from the ordinary common law or chancery jurisdiction conferred hy the statute creating these county courts. The jurisdiction is limited as to duration of time, as to the class of persons for whose benefit it is intended, as to the subject-matter, and as to the mode of its exercise.
In either case, however, — that is to say, whether the court was constitutionally a court of inferior jurisdiction, or whether the jurisdiction conferred by the act is what is termed a special limited statutory jurisdiction, — every fact essential to authorize the court to make the orders, must appear upon the record which the court makes of its transactions.* Martin v. McKinney, a leading case in Kentucky,† as to the character of “ county courts,” is in point, and we cite it the more particularly, since the laws of Virginia and of Kentucky are known to be much identical, the latter State having been created out of the former. The County Court of Mason County there — acting under a statute which gave the court authority to deprive a keeper of a ferry of his license, if he either neglected to furnish the necessary boats, or the number of hands required by the court, or if the ferry -itself became wholly disused and unfrequented for two years —had deprived Martin of his right to keep a ferry over the Ohio; but the judgment of the county court did not state for which of the three causes the court had done what it did, ■ or even that it had done it for any. On motion td set the judgment, for want of such specification in the record, aside, the Court of Appeals says:
“ This being a law which authorizes the county court to interfere with and deprive citizens of their rights and property in a summary way, it should appear from the record of their proceedings that they acted within their power and authority, and, therefore, nothing ought to be presumed to support their proceedings. Nor can this case be assimilated to the proceedings *336 of a court of unlimited jurisdiction in correcting the acts of ministerial officers, who, in carrying judgments into execution, either wilfully or negligently abuse the process of the court. In the latter case, every presumption is to be indulged in support of the unlimited jurisdiction, because it is derived from the common law. In the former, no such presumption is permitted, because the authority is given by statute, which must be strictly and substantially pursued.”
Now, as to first of the decrees or judgments or orders — by whatever name the release may be called — of the County Court of Kanawha:
It does not aver or show that the land was .not, prior to the first day of April, 1831, vested in the President and Directors of the Literary Fund.
It does not aver and show that Matthias Bruen derived title to the land from any of the persons in- whose' names the land is shown by the release to have been returned delinquent; nor does it aver or show that Bruen claimed the land either mediately or immediately by grant from the commonwealth.
It does not aver or show that Bruen had legal possession of said land.
It does.not aver or show that said land had been returned delinquent (as it was) in the names of Jesse Wain and others, or any other person or persons, from 1805 to 1814, inclusive. Therefore, the court had no jurisdiction to release the land for those years, and for the delinquency of those years the land became- forfeited, and vested in the commonwealth.
The second release is equally defective.
 Kentucky Decisions, sometimes-called Printed Decisions (a rare work, Frankfort, 1805), p. 380.